S. AMANDA MARSHALL, OSB #95347
United States Attorney
District of Oregon
**LEAH K. BOLSTAD, OSB #05203**
Assistant United States Attorney
Leah.Bolstad@usdoj.gov
1000 S.W. Third, Suite 600
Portland, OR 97204-2902
Telephone:  (503) 727-1000
Facsimile:   (503) 727-1117
Attorneys for United States of America

## UNITED STATES DISTRICT COURT
### DISTRICT OF OREGON
### PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Case No. 3:11-CR-324-HZ |
| v. | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **FIDEL MENDOZA-LOPEZ,** | Sentencing Hearing: 6-25-12 at 9:00 a.m. |
| **Defendant.** | |

The United States of America, by S. Amanda Marshall, United States Attorney for the District of Oregon, and Leah K. Bolstad, Assistant United States Attorney, hereby submits the following sentencing memorandum

### I.   GOVERNMENT'S SENTENCING RECOMMENDATION

For the reasons set forth below, the government recommends that the Court impose a sentence of 135 months' imprisonment, a five-year term of supervised release and a $100 fee assessment.

///

## II.   SUMMARY OF PROCEEDINGS

On August 17, 2011, the grand jury issued a three-count Indictment charging defendant with three counts of Unlawful Distribution of Methamphetamine.

On April 9, 2012, Magistrate Judge Paul Papak held a settlement conference for the parties.  Defendant accepted the government's plea offer.

On April 9, 2012, defendant appeared in front of Judge Michael Simon and pled guilty to Count Three, Distribution of Methamphetamine in an amount exceeding 50 grams of actual methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), and (b)(1)(A).  The maximum sentence for this offense is life imprisonment, a mandatory minimum of ten years' imprisonment, a fine of $4,000,000, five years of supervised release, and a $100 fee assessment.

The United States Probation Office completed a Presentence Report (PSR).  The government agrees with the PSR's factual summary, and the criminal history summary, and guideline calculation.

## III.   FACTUAL BACKGROUND

In June 2011, the Clackamas County Sheriff's Office (CCSO) Interagency Task Force received information that Michael Ragnone ("Russian John," separately indicted in 3:11-CR-00323-MO) was being sourced with narcotics by this defendant, Fidel Mendoza-Lopez (a.k.a. "Tahoe").  PSR ¶ 8.  This information was consistent with evidence already gathered by an undercover officer who, when first introduced to Ragnone in April 2011, saw calls coming into Ragnone's phone from "Tahoe Bitch."

CCSO successfully introduced an undercover officer (hereinafter, the UC), to this defendant Fidel Mendoza-Lopez ("Tahoe").  PSR ¶ 8.  Defendant made three deliveries to the UC on the following dates, and with the corresponding quantities of methamphetamine confirmed by the Oregon State Police Forensic Laboratory:

1. July 21, 2011 - 2 oz. buy for $2,000.  [Lab: 55.47 g mixture; 20 g actual].  PSR ¶ 15.

2. July 29, 2011 - 4 oz. buy for $4,000.  [Lab: 111.04 g mixture; 85 g actual].  PSR ¶ 17.

3. August 12, 2011 - 4 oz. buy for $4,000 [Lab: 111.43 g mixture; 82 g actual]. PSR ¶ 19.

**TOTALS**: $10,000 buy money; 187 grams actual methamphetamine.

In the second controlled buy, surveillance watched defendant arrive as the driver of a silver Mustang with an unknown Hispanic male passenger.  PSR ¶ 17.  The young Hispanic male entered the UC's car, made the delivery, received the money, and returned to defendant's vehicle. PSR ¶ 17.

Just before the third controlled buy, defendant spoke to the UC by telephone and advised the UC that he would be sending a runner (his "friend") to deliver the product.  PSR ¶ 19.  Soon thereafter, the runner called the UC, identified himself as "Alex," and indicated he was on the way to deliver.  Surveillance watched the meet location and observed defendant driving a silver Mustang in which an unidentified Hispanic male was a passenger.  The passenger (later identified as "Alex", a different runner than used in the second buy from July 29, 2012) got out of the Mustang, walked to the UC vehicle, delivered the four ounces of product, and received the $4,000 in buy money from the UC.  PSR ¶ 19.  Surveillance watched "Alex" return to the silver Mustang.  Next, the UC placed a call to defendant to thank him, and in a somewhat surprising move, the defendant walked over to the UC's vehicle where defendant confirmed that Alex was

his runner/courier, and confirmed that Alex brought the product to the UC and delivered the money to defendant. PSR ¶ 19.

## IV. SENTENCING CONSIDERATIONS

While not bound by the Sentencing Guidelines, district courts must consult the Guidelines and take them into account when sentencing. *United States v. Booker,* 543 U.S. 220, 125 S. Ct. 738, 767 (2005). Even though the Guidelines are advisory, they remain influential in an effort to ensure national consistency. *Gall v. United States*, 128 S. Ct. 586, 596 (2007) ("to secure nationwide consistency, the Guidelines should be the starting point and initial benchmark" for sentencing); *see also United States v. Cantrell*, 433 F.3d 1269, 1279 (9th Cir. 2006) ("[The] continuing duty of district courts to consult the Guidelines is statutory.").

After the parties are given a chance to argue for a sentence they believe is appropriate, the Court should consider the § 3553(a) factors and decide if they support the sentence suggested by the parties. *United States v. Carty, 520* F.3d 984, 991 (9th Cir. 2008) (citing *Gall*, 128 S. Ct. at 596-97, n.6). The Court must make an individualized determination based on the facts, may not presume that the Guideline range is reasonable, and should not give the Guidelines factors more or less weight than other § 3553(a) factors. *Id.* If the Court decides an outside-Guidelines sentence is warranted, the Court must ensure the justification is sufficiently compelling to support the degree of variance. *Id.* And finally, once a sentence is selected, the Court must explain it sufficiently to permit meaningful appellate review. *Id.* at 992.

Factors to consider under 18 U.S.C. § 3553(a) include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense; the need for the sentence to promote respect for the law;

the need for the sentence to provide just punishment for the offense; the need for the sentence to afford adequate deterrence to criminal conduct; the need for the sentence to protect the public from further crimes of the defendant; and the need to provide the defendant with needed training, care, or treatment.

## V.     PLEA AGREEMENT AND RECOMMENDED SENTENCE

### A.     Relevant Conduct

The parties agree that defendant is responsible for between 150 and 500 grams of actual methamphetamine. Plea Agreement ¶ 6; PSR ¶ 30. This relevant conduct produces a base offense level of 34 prior to adjustments. PSR ¶ 30.

### B.     Leadership Role

The government agrees with the PSR writer and recommends, and the defense agrees that it is appropriate, a two-level increase in defendant's offense level pursuant to § 3B1.1 for leadership role. Plea Agreement ¶ 10; PSR ¶¶ 9, 32. This leadership enhancement is appropriate because defendant managed and directed other individuals, including several couriers or runners who delivered his product, interpreters to facilitate the drug buy conversations with English-speaking customers, and actively sought to sell methamphetamine in larger and larger quantities. PSR ¶ 32.

### C.     Safety Valve

The parties agree that defendant does not meet the criteria for safety valve eligibility pursuant to Guideline § 2D1.1(b)(11). Plea Agreement ¶ 9.

///

///

### D. Acceptance of Responsibility

The government recommends a three-level reduction to recognize defendant's acceptance of responsibility pursuant to § 3E1.1. Plea Agreement ¶ 7; PSR ¶ 36.

### E. Money Judgment

On April 9, 2012, defendant pled guilty to Count Three of the Indictment and agreed to the money judgment of proceeds in the amount of $50,000.00. (CR 33). The government respectfully requests the Court make an oral pronouncement of the forfeiture during the sentencing hearing by stating that "The defendant shall forfeit the proceeds listed in the Preliminary Order of Forfeiture entered on April 9, 2012."

## VI. CONCLUSION & RECOMMENDATION

Pursuant to the plea agreement, defendant may seek a downward adjustment or variance based on the factors listed in 18 U.S.C. § 3553(a), but shall not request a sentence lower than the statutory mandatory minimum of 120 months' imprisonment. For the reasons set forth above, the government urges the Court to find that a sentence of 135 months' imprisonment, followed by five years on supervised release, and a fee assessment of $100, satisfies the requirement of 18 U.S.C. § 3553(a), as a "sentence sufficient, but not greater than necessary" to meet the purposes of § 3553(a)(2).

Dated this 19th day of June 2012.

Respectfully submitted,

S. AMANDA MARSHALL
United States Attorney
*s/ Leah K. Bolstad*
LEAH K. BOLSTAD, OSB #05203
Assistant United States Attorney